**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TITUS KORNEGAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 11-984 (GK) |
| | ) |
| MASTER SECURITY, LLC, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

Titus Kornegay ("Plaintiff" or "Kornegay") brings this action against Master Security, LLC ("Master") for breach of a collective bargaining agreement and against United Union of Security Guards ("Union") for breach of its duty of fair representation ("Defendants"), under Section 301 of the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 151 <u>et</u> <u>seq.</u>

This matter is before the Court on Master and Union's Motions for Summary Judgment on the Threshold Issue of the Duty of Fair Representation [Dkt. Nos. 46 and 47]. Upon consideration of the Motions, Opposition, Replies, and the entire record herein, and for the reasons set forth below, the Motions are **granted.**

I.   **BACKGROUND**

A.   **Factual Background**[1]

Master provides security services for federal government agencies, among other clients. Kornegay is a former part-time security guard who was employed by Master at the headquarters building of the U.S. Department of Housing and Urban Development ("HUD") in Washington, D.C. Kornegay worked for Master for over two years before Master terminated his employment on March 10, 2011.

Union is an unaffiliated labor organization that represents 1500 or more security officers in the Greater Washington, D.C.-Baltimore, Md. Metropolitan Area, among other localities. Union utilizes work-site stewards to assist security officers with grievances as well as to monitor employer adherence to the terms of the applicable collective bargaining agreement ("CBA").

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Facts submitted pursuant to Local Civil Rule 7(h). Plaintiff, proceeding pro se, failed to file a "concise statement" that sets forth "all material facts to which it is contended that there exists a genuine issue necessary to be litigated" as required by Local Civil Rule 7(h)(1). Because of the leniency afforded pro se plaintiffs, the Court looks to Plaintiff's "Summary of Events to Support Motion of Opposition" as his "concise statement" of facts in dispute. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pleadings of pro se plaintiffs are subject to less stringent standards than those of trained attorneys).

Master and Union are parties to a CBA effective as of September 28, 2010. Master Ex. 4. The CBA contains numerous provisions that govern pay, working hours and conditions of work, the imposition of disciplinary action by the employer, and the resolution of workplace disputes through a three step grievance process.[2] Id.

In May 2010, Kornegay failed a drug test conducted by an independent laboratory retained by Master. Master and Union claim that Kornegay subsequently was fired, and that he was only reinstated after Union's intervention on his behalf.[3] Master and Union further claim that Master agreed to reinstate Kornegay

---

[2]   In Step 1 of the process, the grievant is to reduce the grievance into writing and submit it to his or her supervisor within five workdays of the event giving rise to the grievance. Master Ex. 4, CBA Section 3. A meeting, attended by the grievant and representatives of the union and company, is to be arranged within ten workdays of the employer's receipt of the written grievance. Id. The employer is required to issue its written response to the grievance within ten workdays after the Step 1 meeting. Id. In Step 2 of the process, a meeting is to be arranged within ten workdays after the employer's response to the Step 1 meeting. The Step 2 meeting is to be attended by the grievant and representatives of the union and employer. Id. If the grievance is not satisfactorily settled after the Step 2 meeting, the grievance may proceed to Step 3. In Step 3 of the process, the Union may refer the grievance to arbitration. Id.

[3] Kornegay disputes this contention, claiming that he "was never cancelled, reprimanded or fired for the error." Opp'n at 2. This factual dispute is not material to the issue of Union's duty of fair representation.

with the understanding that he would be subjected to unannounced and unlimited random drug testing at the discretion of his supervisors and managers at the HUD worksite.

On or about February 24, 2011, Kornegay filed a grievance claiming that he was entitled to a paid ½ hour lunch period, which was duty-free and incorporated into his 6½ hour work-shift. Master denied the grievance and explained that, under the CBA, Kornegay was not entitled to be compensated by Master for the ½ hour lunch period.

On March 10, 2011, Master asked Kornegay and several other security officers to submit to a worksite drug test. The drug test was to be conducted by the independent laboratory used by Master. Kornegay refused to provide a sample for the drug test and was terminated on that same day.[4] All of the other security officers complied with Master's directive. Several of those other security officers were terminated at the same time because of positive drug tests. Kornegay claims that he was targeted

---

[4] Kornegay does not dispute that he refused to provide Master with a sample for the drug test, but he claims that on the day of his termination, he "proceeded to the regular laboratory for testing receiving negative results for drug use." Opp'n at 4.

for the drug test in retaliation for filing the unpaid lunch break grievance.[5]

On March 22, 2011, nearly two weeks after his termination, Kornegay met with Union's then-president, Ruthie Rouse ("Rouse"), at the Union office to discuss his termination. Rouse explained to Kornegay that his refusal to take the drug test at the worksite was grounds for immediate termination under the CBA. Rouse advised Kornegay that he should submit to a hair follicle drug test at an independent laboratory, the results of which Union would use in its efforts to convince Master to reinstate Kornegay.[6] Kornegay refused to submit to the hair follicle drug test, explaining that to do so would "defeat[] the complaint of excessive testing." Opp'n at 5. Rouse informed Kornegay that Union would not assist him without an independent drug test.

Neither Kornegay nor Union filed a grievance related to Kornegay's termination.

_____

[5] Master disputes this contention, claiming that Kornegay was randomly selected for the drug test.   As discussed, infra, Master's motivation for requesting the drug test is not directly relevant to the issue of whether Union breached its duty of fair representations in connection with Kornegay's termination.

[6] Kornegay claims that he "offered Ms. Rouse the negative drug test results from the test conducted on the day he was terminated, [but] she refused to [accept] it." Opp'n at 4-5.

**B.   Procedural Background**

On April 21, 2011, Plaintiff filed his Complaint in the Superior Court of the District of Columbia [Dkt. No. 1, Ex. A]. The action was docketed in that court as Case No. 2011 CA 003082B. On May 31, 2011, Master removed the case from the Superior Court of the District of Columbia to this Court. On June 1, 2011, Master filed its Answer to the Complaint [Dkt. No. 6]. On June 7, 2011, Union filed its Answer to the Complaint [Dkt. No. 9].

On June 28, 2011, Plaintiff filed his Amended Complaint [Dkt. No. 13]. On July 5, 2011, Master filed its Answer to the Amended Complaint [Dkt. No. 16]. On July 14, 2011, Union filed its Answer to the Amended Complaint [Dkt. No. 17].

On August 30, 2012 Master and Union filed their Motions for Summary Judgment [Dkt. Nos. 46 and 47]. On October 17, 2012, Plaintiff filed his Opposition to those Motions [Dkt. No. 50]. On October 26, 2012, Union filed its Reply in Support of its Motion for Summary Judgment [Dkt. No. 52]. And on November 2, 2012, Master filed its Reply in Support of its Motion for Summary Judgment [Dkt. No. 53].

## II.  STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Waterhouse v. Dist. of Columbia, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. See Celotex, 477 U.S. at 323. In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Keyes v. Dist. of Columbia, 372 F.3d 434, 436 (D.C. Cir. 2004).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials; rather, it

must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed.R.Civ.P. 56(c)(1); Celotex, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

Where, as here, a plaintiff is proceeding pro se, "the Court must take particular care to construe the plaintiff's filings liberally, for such [filings] are held 'to less stringent standards than formal pleadings drafted by lawyers.'" Cheeks v. Fort Myer Constr. Co., 722 F. Supp. 2d 93, 107 (D.D.C. 2010) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)).

## III. ANALYSIS

Kornegay claims that Master breached the CBA by failing to pay him for his daily lunch period, ordering him to submit to drug tests "outside of the CBA requirements," and terminating him because he requested payment of his wages in full. Complaint ¶¶ 7-9. Kornegay further claims that Union breached its duty of fair representation by failing to take reasonable and proper action with respect to his grievance against Master for payment of wages in full and his termination. Id. ¶¶ 10-13.

Master and Union argue that they are entitled to judgment as a matter of law because Union did not breach its duty of fair representation with respect to either Kornegay's unpaid lunch period grievance or his termination. Union further argues that this action is barred because Kornegay failed to exhaust his remedies under the CBA and Union's Constitution and By-Laws.

## A.   Governing Legal Principles

This matter involves a "hybrid" claim under § 301 of the NLRA comprising two distinct causes of action: one against Union for breach of the duty of fair representation and one against Master for breach of contract. DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 164 (1983); Gwin v. Nat'l Marine Engineers Beneficial Ass'n, 966 F. Supp. 4, 7 (D.D.C. 1997) ("Plaintiff's § 301/fair representation action is a 'hybrid' suit comprising two causes of action").

In order to prevail against either Defendant, Plaintiff must prove both parts of the hybrid claim, as the two parts are "inextricably interdependent." United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67 (1981). "The duty of fair representation is addressed first, because it is the indispensable predicate to the suit against the employer." Gwin, 966 F. Supp. at 7 (internal quotation marks omitted); Noble v.

U.S. Postal Serv., 537 F. Supp. 2d 210, 216 (D.D.C. 2008) ("The
Court must initially determine the threshold issue of whether a
bargaining representative has breached its duty of fair
representation before it can address the merits of plaintiff's
breach of contract claim").

A union has an obligation "to serve the interests of all
members without hostility or discrimination toward any, to
exercise its discretion with complete good faith and honesty,
and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171,
177 (1967). A union is entitled to "great deference in
performing its representational duties." Gwin, 966 F. Supp at 7;
Airline Pilots Ass'n v. O'Neill, 499 U.S. 65, 78 (1991) ("Any
substantive examination of a union's performance [] must be
highly deferential, recognizing the wide latitude that
negotiators need for the effective performance of their
bargaining responsibilities").

A union breaches its duty of fair representation only when
its conduct toward a member of the collective bargaining unit is
"arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at
190. A union will be deemed to have acted in bad faith "when
there is substantial evidence of 'fraud, deceitful action, or

dishonest conduct.'" <u>Gwin</u>, 966 F. Supp. at 7 (quoting <u>Humphrey v. Moore</u>, 375 U.S. 335, 348 (1964).

In considering duty of fair representation complaints that are premised on assertions of arbitrary action, courts will find a breach of that duty "only if the union's action can be fairly characterized as so far outside a wide range of reasonableness that it is entirely irrational." <u>Thomas v. N.L.R.B.</u>, 213 F.3d 651, 656 (D.C. Cir. 2000) (internal quotation marks omitted). "Mere negligence is insufficient to establish that a union acted arbitrarily." <u>Noble</u>, 537 F. Supp. 2d at 216.

**B.   Union Did Not Breach Its Duty of Fair Representation in Relation to Kornegay's Unpaid Lunch Break Grievance**

Defendants argue that "Union did not have a duty of fair representation to pursue the grievance filed by Kornegay regarding unpaid break time because the grievance was completely without merit." Master Mot. for Summ. J. at 8; <u>see</u> Union Mot. for Summ. J. at 6-7. Union further argues that the claim is barred because "Kornegay failed or declined to pursue his grievance beyond Step 1 of the grievance procedure as expressly required by the CBA." Union Mot. for Summ. J. at 7. In his Opposition, Plaintiff essentially limits his response to arguing

the merits of his grievance, rather than addressing Union's
arguments.[7]

The uncontroverted facts in this action make it clear that
Union did not breach its duty of fair representation in relation
to the unpaid lunch break grievance. It is undisputed: (1) that
Plaintiff filed a grievance claiming that he was entitled to a
paid lunch period, Union Ex. 1; (2) that Master denied the
grievance at Step 1 and explained its position, Union Ex. 3;
Kornegay Master Dep. Tr. 42:11-43:5; (3) that Plaintiff failed
to pursue his grievance beyond Step 1 of the grievance
procedure; and (4) that Union considered the matter and declined
to file a grievance at the company level, Rouse Decl. ¶ 4; Opp'n
at 9 (email showing consideration of the grievance).

The fact that Plaintiff believes that his grievance has
merit and that Union should have pursued it beyond Step 1 of the
grievance process is not controlling. See Plain v. AT&T Corp.,
424 F. Supp. 2d 11, 21 n.12 (D.D.C. 2006) ("[A] union does not
breach its duty of fair representation merely because it does
not process every grievance to the final step of grievance or

---

[7] Pro se Plaintiff's Opposition consists of a chronological
"Summary of Events to Support Motion of Opposition," to which he
attaches a series of emails, drug test results and other
documents in no apparent order.   He never explains the
relationship between those items and the arguments of
Defendants.

arbitration procedures"). The relevant inquiry is whether Union's decision not to pursue the grievance was "arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190.

Given that Plaintiff does not even argue that Union's decision was arbitrary, and that the Court is unable to identify a single provision of the CBA that supports Plaintiff's wage payment claim, Union's decision not to pursue the grievance beyond Step 1 cannot be "fairly characterized as so far outside a wide range of reasonableness that it is entirely irrational." Thomas, 213 F.3d at 656 (internal quotation marks omitted); see Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45-46 (1998) (stating that a union has "room to make discretionary decisions and choices, even if those judgments are ultimately wrong"). Consequently, Union's decision cannot be deemed arbitrary.

Moreover, Plaintiff does not allege that Union's decision was discriminatory or that Union acted in bad faith, nor has he put forward any evidence of "fraud, deceitful action, or dishonest conduct." Humphrey, 375 U.S. at 348. Accordingly, the Court concludes that Union did not breach its duty of fair representation with respect to the unpaid lunch break grievance.

**C.    Union Did Not Breach Its Duty of Fair Representation
in Relation to Kornegay's Termination**

Defendants next argue that Union satisfied its duty of fair
representation in relation to Plaintiff's termination by
offering to intervene on Plaintiff's behalf if he submitted to a
hair follicle drug test which was negative. Union Mot. for Summ.
J. at 8-9; Master Mot. for Summ. J. at 9. Plaintiff does not
directly respond to Defendants' argument. Instead, Plaintiff
contends that Master singled him out for drug testing in
retaliation for filing the unpaid lunch break grievance.
Plaintiff further contends that he refused to submit to the hair
follicle drug test as requested by Union because to do so would
have "defeated the complaint of excessive testing." Opp'n at 3-
5.

The uncontroverted facts in this action make it clear that
Union did not breach its duty of fair representation in relation
to Plaintiff's termination. Even assuming that Plaintiff could
establish that Master improperly subjected him to a drug test,
and assuming further that Master did not have just cause to
terminate him for refusing to submit to that drug test, summary
judgment would be justified. Plaintiff has failed to proffer any
evidence at all that would support a finding that Union's

refusal to pursue Plaintiff's reinstatement was "arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190.

The undisputed evidence establishes that Union expressed a willingness to pursue Plaintiff's reinstatement provided that he submit to a hair follicle drug test. The undisputed evidence also establishes that Plaintiff refused Union's request that he submit to such a drug test.

Union assessed Plaintiff's situation, including his prior failed drug test[8] and his refusal to submit to the drug test that resulted in his termination, and recommended a reasonable course of action for pursuing his reinstatement. Given the context of Plaintiff's termination, it was far from "entirely irrational" for Union to condition its pursuit of Plaintiff's reinstatement on his agreeing to undergo the hair follicle drug test, the results of which Union could have presented to Master in order to establish the absence of drugs in Plaintiff's system. Thomas, 213 F.3d at 656. Accordingly, Union's decision not to pursue Plaintiff's reinstatement after his refusal to cooperate with its recommended course of action was not arbitrary and was well within the "wide range of reasonableness" afforded to unions in performing their representational duties. Id.; see Chauffeurs,

---

[8] As noted, supra, in May 2010, Plaintiff failed a drug test conducted by an independent laboratory retained by Master.

- 15 -

Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-
68 (1990) (A union "has broad discretion in its decision whether
and how to pursue an employee's grievance against an employer").

Moreover, as with the unpaid lunch break grievance,
Plaintiff does not allege that Union's decision was
discriminatory or that Union acted in bad faith, nor has he put
forward any evidence of "fraud, deceitful action, or dishonest
conduct." Humphrey, 375 U.S. at 348. Therefore, the Court
concludes that Union did not breach its duty of fair
representation with respect to Plaintiff's termination.

Having determined that there is no genuine issue of
material fact on the issue of Union's duty of fair
representation and that Union and Master are entitled to
judgment as a matter of law, the Court need not reach the issue
of whether Master breached the CBA.

**IV.   CONCLUSION**

Upon consideration of the Motions, Opposition, Replies, and the entire record herein, and for the reasons set forth in this Memorandum Opinion, the Motions for Summary Judgment are **granted.**

/s/_____

January _____, 2013                     Gladys Kessler
                                        United States District Judge

Copies to: attorneys on record via ECF

- 17 -